Defendants stand guilty of conspiring since before 2012 to manufacture and possess with the intent to distribute marijuana. They admitted in their plea agreement that they intended to sell that marijuana, and that hundreds of thousands of dollars hidden on their property was connected to that offense. Their own evidence showed that they had sold marijuana since at least 2010. Yet among other things, the defendants had no sales permits, showed no efforts to obtain sales permits, had filed no sales tax reports, and had no profit and were not in strict compliance with California medical marijuana law. And they should not be able to escape sentencing in this case. Do you need a permit before you actually sell? Well, two things, Your Honor. Well, the simple answer is yes or no, and then you can explain. The law is not clear that you need a permit before you actually engage in a sale. Their own evidence here, however, showed that they had already engaged in sales since at least 2010. Are they charged with that? Well, they're charged with the conspiracy that began before 2012, and in any event, they stand guilty of a conspiracy, and their burden is to show that they were in strict compliance with California medical marijuana law. When they came forward with evidence to meet that burden, they showed that they had engaged in sales since 2010, and yet they had no sales permits related to those sales. Now, that shows two things. One, with respect to the conspiracy here, I think the district court should have concluded that they were not in strict compliance with California medical marijuana law. But even if the district court correctly looked only at the future sales of the 327 plants on their property... Your Honor, waiving that argument that the conspiracy is the crime for which they pled guilty and were sentenced, you're just looking forward, I take it, without waiving that first argument? Yes, that's right. I'm making both arguments here. All right. And so my second argument is, even if the district court only looked at the 327 plants, the district court's own formulation of the standard here was that the defendants had the burden to show that they were likely to come into compliance by the time of any sale. Well, what we have here is no effort to obtain sales permits, no history of obtaining sales permits, and in fact, an argument by defense counsel at the McIntosh hearing that the sales permit requirements didn't apply to them at all. So I think that by a preponderance standard here, the district court should have found, even if we take its own standard as the correct one, that the defendants were not likely to come into compliance by the time of any sale. Again, the burden was on the defendants, and they came forward with no evidence that they had ever tried to obtain sales permits, that they were in the process of doing so, that they understood the requirements to do so. To the contrary, they denied that they needed to do so. It harkens back, though, to my first question of when you need a sales permit, because if you have the raw product, which is in some phase of its maturation on the land, and you're not selling at that point, you don't need a sales permit, then what are you in violation of at that point? Well, Your Honor, again, if we apply the district court standard here, it was the burden on them to show that they were likely to come into compliance. So I'm agreeing that, with respect to the 327 plants, again, in response to Judge Wallace's question, not waiving the argument that we can look backward here based on their conspiracy plea, but for purposes of your question, looking only at the 327 plants, I think the district court could not really find, by a preponderance, that they were likely to obtain a sales permit before those sales. And that's the standard that the district court itself set out. Do you need one of those? One of the other questions that lurks in this case is obviously this collective situation, because you have individuals with appropriate documentation for medical marijuana purposes for, I think it's 99 plants. Is that right, on the individuals? Well, I think those are two sort of separate issues. Right, but I'm saying that you have that, and then you have the collective issue. Right, right. So let's start with the individuals. Do they have authorization for the 99 plants? Well, I think if we take their evidence as correct, and I'm not questioning it here for our purposes, the district court took it as correct. They had authorization for 99 plants for themselves. But they had more than what would be 297 plants for three people on their property. That's, I think, not disputed here. Right. Then you move into the collective issue, and their claim, which I'm interested in your comments on, as I understood it, is that they grew these plants for the benefit of someone else, and it would be transferred, that there's no profit there. Right. And if that's the case, then how does the Board of Equalization per plant play? Well, profit and sales are two separate things, Your Honor. An individual, even if we take ourselves out of the marijuana context for a moment, an individual can make a sale or a transaction at a loss. It is still a sale. It's still a sale for purposes of a sales permit, and it's still a sale for purposes of reporting sales tax. Now, I will point the Court to ER 188, which is the Attorney General Guidelines, and those guidelines purport to explain the Board of Equalization requirement. And what they say is that the Board of Equalization has determined that medical marijuana transactions, not just profit transactions, but transactions are subject to sales tax, regardless of whether the individual or group makes a profit, and those engaging in, again, transactions involving medical marijuana, must obtain a seller's permit. I think that that's black and white, and the District Court didn't, with respect to the District Court, didn't grapple with that other than to say that any sales would be in the future. And again, that brings us full circle to how we started our question. Is it your position that if a party violates the tax laws of California, that means he's in a profitable business? Where do we go with that? Well, I don't think that means the person necessarily made a profit. I think even if an individual sells at a loss, if he or she engages in a transaction, then he or she has to report for sales tax purposes. They may not have sales tax payments to make if they sold at a loss, but they were still required to file sales tax reports. That was the undisputed testimony, or unrebutted testimony, I should say, at the McIntosh hearing by the government's witness. That then brings you back again to this question of timing, because I think, as I understand the law, it says, if you do not obtain a seller's permit prior to the date the first tax return is due, then you're subject to penalty. So it seems that you need to have in your possession, either at the time of sale or at the time your tax return is due, this permit. Do you agree with that characterization? Well, I'm not sure. I admit that the law is a little ambiguous on that. My reading of it is when the penalty becomes applicable in terms of the repercussions of not having obtained a seller's permit. My reading of the law is that a seller's permit has to be obtained before the first sale. Now, what the Board of Equalization does to you retrospectively, if you did not obtain that in terms of penalties, I think that's what the phrase you refer to. No, that makes sense. But then my question is, if you're sitting there growing 300 and some plants, or the number that are charged here, but you haven't made a sale, why do you need a permit at that point? What if they all died? What if you had a hurricane or an earthquake and all the plants died? You never actually could sell them. Would you need a permit between the time you planted them and the time something catastrophic happened? Your Honor, I think on slightly different facts, it might not be clear error for a district court to say, okay, you don't have a sales permit yet, so I'm going to find that you are in compliance with state law. But what we have here is no indication of any effort to obtain sales permits, no applications for sales permits, no paperwork for sales permits. And again, quite to the contrary, and I know that defense counsel arguments are not necessarily evidence, but I think they can be held against a client. I think the law is clear on that. Defense counsel arguments that these permit requirements didn't apply. Well, they could be wrong on that, and you could also be wrong on your position, and the law could be somewhere in between, right? Well, that's right, Your Honor. But I think if a district court is looking at the moment in time and whether these defendants are in compliance or likely to come into compliance by the time of the sale of these marijuana. And again, the defendants admitted in their plea agreements that they intended to sell this marijuana. This was not a question of, well, they might never sell it. I mean, we have to take their plea admissions as established, and they admitted that they intended to sell this marijuana on their property. And if that's the case, I think it was incumbent on the district court to say, well, what have you done to come into compliance with California medical marijuana law? Because as we stand here now, you are in violation of federal law. And so to gain the benefit of this medical marijuana rider, you've got to show us that you are taking steps to come into compliance or at the very least that you have come into compliance with past sales. And there was no showing in that regard by these defendants. So do you have... Go ahead. Before you... Go ahead. Before you run out of time, on this requirement of strictly construed, I take it that's the California, how the California construed, right? So it's the cases that we have to deal with are the California cases. Now, is it fair game to use a court of appeals, or do we have to just look at the Supreme Court of California? Well, I think California state court of appeals decisions that... Court of... Yeah, court of appeals. Right. That set forth the meaning of California medical marijuana law could certainly be considered by this court. Assuming those cases obviously have not been overruled or called into question by the California Supreme Court. So why don't you just ask us to ask the California Supreme Court what their law is? We're relying on reading the cases ourselves. Is that correct? That's right, Your Honor. But I think most of the applicable law here is set forth in, as we've provided in our brief, the Medical Marijuana Program Act, the Board of Equalization Notices, and the Attorney General Guidelines, and the state... How does the Attorney General's declaration fit into this? I was impressed with the Attorney General outlining some of it. They seemed logical to me. But how does the Attorney General then fit in to this development of the law? Do we give it the same type of weight as we do the court of appeals? Is there some case that tells us how to deal with what the Attorney General says we should look for and what the schedules are? I'm not aware of a case on that, Your Honor. Now, I will note that the MMPA itself has a provision that requires the Attorney General to issue guidelines clarifying the law. And so, in that sense, they are issued under a statutory directive. Now, are the guidelines themselves, do they have the force of law? Are they binding? I will not go that far, Your Honor. I do think they do quite a bit to clarify for medical marijuana growers what law applies to them. They help us in understanding the Board of Equalization requirements. Do you have a California case that states what you stated? I'm sorry, Your Honor. I don't. There should be some. There's no one that said that it's a force of law. That's right. And again, I'm not submitting that they do have the force of law in and of themselves. I do think they go quite a bit ways in explaining the law. Did you cite to us the authority that you say it has the force of law? Yes, I believe our brief cites to the... Is it a case or a statute? No, it's a provision in the Medical Marijuana Program Act that requires the Attorney General to issue the guidelines that the Attorney General then issued. But we don't have a case or anything else that says what the force of those guidelines is. No, but I'd be happy to look into that and submit a 20HA letter. Thank you. Thank you. Ronald Richards, may it please the Court, for Anthony Pazarski, Louis Palazzo for Sonny Moore. To answer that question directly, those guidelines are antiquated and old. Jerry Brown was the AG when they were written, and there's been many enactments and cases since they were written, and they have no force of law. They're just simply guidelines from 2008, I believe. So I wouldn't rely on them at all. There's been many, many subsequent statutes, including that we've seen since about 2.775 of the Health and Safety Code, which provides immunity. In addition to your question, Judge Wallace, on the standard, California has a very liberal standard, which is much different than the Ninth Circuit standard of strictly construing the test. And so we were able to meet the Ninth Circuit standard and we had the burden approved. We actually argued those things in the district court, but the district court held us to the highest standard. And what's critical, which my friend over here omitted, was that the parties agreed that the strict compliance with California law can only be assessed as of the date of the charge conduct, July 10, 2012, and that's at ER 7. That's in the judge's order. So even though my friend over here was not at the hearing, all the counsel agreed that the operative drug was the 327 plants, because there was no evidence of prior sales that wasn't part of the hearing. What about the intent to sell? I mean, he said, you know, we've got... We're not in an odd situation. You've had a plea, and now we're in this interim period, but in the plea there was an admission of intent to sell. Right, but that's a great question, Judge McCohen. The issue, though, is that was a federal plea agreement simply to sell. It didn't say sell illegally under state law. What happened is the day before the sentencing, President Obama indicated he was going to sign a watershed statute, and the judge, in order to seek justice, withheld the sentencing so the defendants would possibly have the benefit of all the arguments that we've seen coming forward, because as you know, it's much more difficult after sentencing. So the issue in the plea agreement, why it was not a factor in the hearing was because that simply was a technical admission that any distribution was in violation of federal law. But the lens the judge was looking at in the hearing was whether there was compliance with state law, which is why the tax permit argument is really a red herring, because these plants could have been eviscerated by mold, by theft, by fire. As you see just on TV, there's been many increased crops in Northern California, and you don't need a permit to sell as a grower if you're selling to a collective, and then the collective is selling to a retail person. That testimony was thoroughly cross-examinated by both of us at the hearing, and the person from the Franchise Tax Board conceded that you don't need a permit for a hypothetical sale, or a future intended sale. And many growers, because of simplicity, or just at the time or the climate in 2012, it was much easier for them to simply, if they had a product, to sell to one collective, and there was no requirement that you audit each member, prospectively or in the future. The problem I have in your case is that, in this context, and in other contexts also, is this was a conspiracy case, and so if it's a conspiracy case, it's far different than selling a few plants or something like that. It's really too inadequate, too, that it's illegal. And it seems to me that that puts an entirely different look on this. I didn't see that the district court saw that and started talking about what in the future is going to happen and whether that meets it. But the conspiracy took place many years earlier, and that's the key issue. How does that fit in with your argument? I can address that head-on. As you know, in a federal conspiracy, you just need an agreement, like you said. However, in this case, the conspirators were the two defendants. There wasn't some other parties that were part of this conspiracy. Sure. They can be in the conspiracy, and they agreed to the conspiracy. This was a plea. Right, but the illegality of the conspiracy was to grow the 327 plants. There was no other evidence in this case that was part of the charged plea agreement. That's the critical difference. Wait a minute. You mean it was actually said that this is a plea agreement for a conspiracy to do with 27 plants? Yes. In the plea agreement itself, it says that. That's correct. It says in the plea agreement that the guideline, the weight, that it was highly negotiated was just 327 plants. The government would not be able to come in and say, by the way, there's some other marijuana we want to charge you with. This was a negotiated information. And it really has nothing to do with what's going to happen in the future that the district court was so involved with. I don't understand that question, Your Honor, if you could clarify what you're asking me. I see your argument there, but it seems to me that it leans against you when you talk about how the district court decided this case, talking about, but in the future, they'll be ready to go. But the actual plea was to a conspiracy that happened years earlier. No, Your Honor. Respectfully, the conspiracy went through July 10, 2012, the date of the seizure of the plants. It's very typical in a resolution in federal court, if there's a conspiracy, to limit the conspiracy to a specific drug weight or a specific amount of plants, so you would know the guideline analysis, so you could properly advise your client of the exposure. I could tell you between my colleague and I, I have the plea agreement in front of me, the specific amount of plants, it's on page 2, line 20, it's 32 kilograms consisting of 320 plants. That's the only thing the defendants admitted to. That's what they agreed to. I know the word conspiracy is the prosecutor darling in every case, but in this case it has no reality, it has no prejudice or impact to the defendants because this plea agreement cabined the government to 320 plants. It was a superseding information. Read that to me where it restricts it to 330 plants. I agree and stipulate that the total amount of marijuana attributable to me for purposes of relevant conduct is 32 kilograms consisting of 320 marijuana plants. That's on page 2, line 20. So there is no other drug that these defendants can be sentenced or charged with. And is that what was seized then? Or the 320 plants? That's correct. They waived the indictment, right? That's correct because we had a plea agreement. They did an information on the 320 plants. Judge Seiler, that's exactly correct. So this was almost like a rule 11 plea where there was no way the defendants could have an exposure greater than the 320 plants. That's why the broad language of relevant conduct was used in the stipulated facts. So there wasn't going to be a situation where then the government or probation would pour it on at the sentencing hearing and talk about other transactions. And that's also why our colleague in San Francisco stipulated or agreed that the only operative marijuana was the 327 plants and that the judge found that in the order. That's why he says the parties that agree defendant strict compliance can only be assessed as the date of the charged conduct. So even though counsel on my left is writing his brief he can't change the chairs that were in the courtroom that day. That was the agreed upon evidence and that's why the conspiracy frankly is irrelevant  The conspiracy was to cultivate the 320 plants in violation of federal law and intend to sell them. The conspiracy that they pled to was was an agreement the conspiracy that they pled to was to manufacture and possess marijuana with intent to sell I'm just reading it, I'm just getting it accurate with intent to sell but it doesn't say intent to sell in violation of California law. The fact is that this marijuana I guess the error that the government made they weren't savvy enough to understand that the marijuana in this case was young immature plants and there was no documentation or evidence whether they were males or females and so what happened at the time of the hearing they weren't in a position from an evidentiary standpoint to really articulate whether this marijuana was ever going to be usable or not because there was simply no detailed analysis of what was taken. They basically took everything there was no state charges in this case and I believe they never were able to ever qualitatively analyze what they took so they were left with just simply young seedlings and we will never know if that marijuana would ever become mature or not because it was destroyed. So that's the factual record that the court had If you're sitting there with a field of marijuana what precludes the charge that you are growing it out of the admission with intent to sell? Well, you're growing it with intent to sell You might sell bad marijuana Maybe you harvested it too young, it's still marijuana Your Honor, if it's male it's not even usable Then it's not usable. Right, so we don't know what would have happened in this case, but you're allowed to The word sell doesn't mean sell for a profit we're dealing with, in this case they pled to a specifically worded federal plea agreement because they were in violation of federal law Then the case was stayed and then the McIntosh decision came out and then it turned out that if these were growers in compliance with state law, which under 11362.775 they have broad immunity from being charged under state law they were then entitled to the benefit of the McIntosh decision and of the rider. So it was an unusual case and that is when they pled, they didn't know about this because it had an occurrence at the rider and then we had to do a do-over, they would have never pled they would have taken advantage of the rider in the first place but in all fairness to the defendants when this plea agreement was drafted and executed on July of 2014 it wasn't contemplated that you would have a defense to the case at that time and so the technical language of the plea agreement shouldn't be used and I think the district court was wise to disregard it because what we really did was focus on what are we dealing with and that was 320 plants that were seized prematurely and then the question is do you need a permit to possibly sell in the future and the answer was of course no because a sales permit there has never been a criminal case in the history of California where someone has been charged criminally for not having a sales tax permit that's simply something that could easily be ameliorated by paying the sales tax but in this case there was simply no evidence of past sales either the court, the government the MPA doesn't require a future sale it has to be compliant with MPA requirements and it's only speculation that a defendant would be required in the future to have to get a sales permit there's no authority that the defendants had to require the status of all the people that may have bought their marijuana in the future we were dealt with the evidence that we were presented it wasn't the defendants job to test the marijuana or do any investigation for prior sales but it was very apparent that after the government investigation there was no evidence of any prior sales I like the point you said it 2 or 3 times now under McIntosh McIntosh applies to your case correct? and you have to prove that they strictly complied with the California law right and we believe applying a clear error standard which was affirmed by the Evans case that the judge found we strictly complied that was the burden we used I guess the judge said you met the preponderance standard although not exactly with a bang he called it sub-optimal sub-optimal evidence so in this case the government does not have the burden although I know the parties argue over nuances of what the district court was saying I think you agree that under Evans and I think the district court agreed in advance that the defendants have the burden and you agree with that correct? yes we do but that doesn't preclude the government from putting on evidence correct? correct but they chose the record they chose they got all the declarations in advance when this thing incubated in the district courts they started requiring defendants to give an initial proffer of what they were going to do sometimes they don't meet the burden it comes up to the 9th circuit you send it back saying maybe they get a hearing but in this particular case the defendants and the government agreed on the evidence the judge accepted most of it, rejected some of it and then made his ruling I don't see if you apply a clear error standard that the judge's ruling was implausible now we're getting into weighing the evidence the judge made a judgment call I cited in the beginning of our brief many cases using a civil injunction standard which the government's appeal is on a civil injunction appeal they appealed on the 60th day well past the criminal appellate limit hearsay is used all the time and the record is more than enough to support, if you apply a clear error standard a civil injunction standard to affirm on a preponderance of the evidence we didn't have to prove ourselves you're going to repeat yourself we got you what I'd like to ask you I've been impressed in trying to say about this it's strictly construed under California law not federal law, under California law and I've read Solace and I've read London it seems to me that you have a problem there that you have to overcome can you state a California case on your side of the argument that was taken up in London and Solace I don't know if there's been any we haven't found any in California the standard is that people have to prove beyond a reasonable doubt that you don't comply with the statute the people have all the burden in California the defendant has a much easier time in California it's not the opposite it's only in this unique federal analysis that the defendant has the burden once you raise a reasonable doubt that you qualify as either a caregiver or a patient the burden shifts to the people to prove that you do not have this immunity beyond a reasonable doubt that's been the law in California for many many years the California defendant has no burden except to raise the immunity and then the burden shifts to the people it's actually an easier burden are you saying you had no responsibility for your client to prove that you were in strict compliance with the California statute in California you do not the words strict compliance are not even used under California law we used the term referring to the California law we said strict compliance you're saying that's a meaningless term if you were a defendant in the state of California the courts don't imply a strict construction strictly construe your defense or immunity it's a much more liberal standard I think we're mixing and matching the state criminal prosecution with the McIntosh hearing and the civil burden the way McIntosh was decided it used a federal civil injunction standard so it made the defendants prove by a preponderance of the evidence that they were in compliance with California law I was just responding to Judge Wallace's question in the state of California now marijuana is legal but when they prosecuted medical marijuana defenses once the defendant showed their marijuana card or showed they were growing for a collective the burden shifted to the state authorities to disprove that beyond a reasonable doubt it was a very broad standard the defendant only had to raise the issue it's much different than in federal federal has a much higher burden which we met in that case you said you wanted authority the case was people versus is the state court authority helpful to you? because I'll concede to you that McIntosh placed a higher burden on these defendants than if we were in state court the burden is as Evans confirmed the defendants have the burden to show by a preponderance I think everybody agrees on that that is the burden in federal court I think we have your point about the differing burdens depending on the proceeding just a moment must the other members of the court have any further questions? thank you your honors I must resist the notion that this plea agreement is limited to the 327 plants to be sure in terms of sentencing the plea agreement contemplated that only the number of plants that were found could apply for relevant conduct for the sentencing guidelines the plea agreement speaks of an agreement to manufacture and possess marijuana on our property with the intention to sell marijuana to others the other point about the plea agreement what does that add to the fact that we're talking about a specific quantity of plants if you didn't have a specific quantity then you wouldn't have anything so you need to link that with the quantity they are charged with basically running a marijuana growing company I can put this in common parlance that's what they're charged with obviously they can only be sentenced for the number of plants that were found and that's the 327 plants so yes we could have presented evidence of additional sales and we agreed not to do that so that's the importance of the sentence but that doesn't mean that this plea agreement means that they didn't engage in broader conduct and I think the point that underscores that is the fact that these defendants admitted that the $416,000 found on their property was connected with this offense now if they are only charged with plants that have not been sold yet then it would be impossible for them to admit that they had $416,000 on their property that was connected to the offense of growing marijuana with the intent to sell it so clearly they had either sold marijuana in the past or they had $416,000 on their property for the purpose of cultivating, growing it cultivating it, transferring it conducting transactions with it that's what they admitted to so again the plea agreement is not limited to the 327 plants I'd like to have your response to their interpretation of the cases that have come up now of having strict compliance their view is that when we look at California law it's strict compliance, we have to then follow the California law as to how they handle it I'm not sure that we have held that and I'm not sure that's a correct reading of the basic case, what's your position? Your Honor, the state laws are relevant to the extent that they define Could you speak up please, I'm missing you The state laws are relevant to the extent that they define what the applicable California medical marijuana law is so with case law and statutory law as well as state tax law all of those things go in the mix of setting forth what the applicable California medical marijuana law is now what McIntosh said and Evans underscored is that in this context the defendants have to show that they strictly complied with all of that law so the California law provides the body of law the substance of law, for example we cited two cases in our brief that say that if a defendant does not come forward with some profit and loss documentation that that might undermine their argument that they weren't profiting from marijuana sales but what McIntosh and Evans say is that the defendants have to show that they strictly complied with all of these facets of state medical marijuana law so we only look to the state law to see what the applicable law is and I don't think here that there was any dispute about what the applicable law is well he's saying that there's a lesser burden of proof in the state side right and Evans clearly rejects that notion I mean what would happen if the defendants had been criminally prosecuted in California state court is completely irrelevant here and Evans makes that abundantly clear what they had to show in this case again they stand guilty of a federal offense what they had to show to escape sentencing was that they strictly complied with all of California's substantive medical marijuana law well I think that you know we're arguing it like it's a black and white proposition I think one you have to credit the way the district court categorized it where we need to find clear air because the district court in reading the decision says we're kind of caught betwixt in between with this situation we're not at a time of sales there's been no admitted sales here and they've explained their operation which is this collective plus the individual and then the district court makes a finding that they've shown enough to be in compliance at that moment and that because they're in this transition of we don't even know if these plants are saleable at this point or what they have the district court can't take it just simply in a moment that the plants were seized it has to kind of mold it or meld it into the future and I think that's where neither side has really offered us any case law on that unless you can offer some now but that we do have the district court's construction and findings I don't have any case law your honor this is a relatively new area but what I will say as a common sense point is and I know that my time is up so if I could just finish here is that under the district court's approach what we really have is a state of immunity for any defendant who is federally guilty of possessing with the intent to distribute if we take the defendant's argument as correct because that defendant necessarily has not sold yet so we could have a defendant who is growing 100,000 plants for example this is a hypothetical and if that defendant says well I haven't sold these plants yet then they are immune from federal prosecution under this theory that just cannot be the case I understand your argument I do note that what the district court pointed and said is your case that might be a different case than the district court so there could be other cases other hypotheticals other situations but they would be different from this one so we'll grapple with that I want to thank both counsel for your argument today the case of United States v. Pesarsky is submitted thank you
judges: Siler, Wallace, McKeown